[Cite as *Gainer v. Cavanaugh*, 2021-Ohio-2173.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MICHAEL GAINER, et al., | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellants | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| ANGELA CAVANAUGH, et al., | : | Case No. 2020CA00151 |
| | : | |
| Defendant - Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court
of Common Pleas, Case No.
2018CV01869 (consolidated with
Case No. 2018CV2129)

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    June 28, 2021

APPEARANCES:

For Plaintiff-Appellants

JACK B. COOPER
Milligan Pusateri Co., :PA
P.O. Box 35459
4684 Douglas Circle N.W.
Canton, Ohio 44735

For Defendant-Appellees

KYLE L. STONE
Stark County Prosecuting Attorney

By: DAVID E. DEIBEL and
JESSICA LOGOTHETIDES
Assistant Prosecuting Attorneys
110 Central Plaza South, Suite 510
Canton, Ohio 44702

*Baldwin, J.*

**{¶1}** Appellants, Michael Gainer, Brenda Gainer and Storybrook Barn, LLC, appeal the decision of the Stark County Common Pleas Court upholding the determination of the Stark County Board of Building Appeals and the Ohio Board of Building Appeals that the use of the appellants' barn was not exempt from safety regulations as a result of the agricultural exception provided in R.C. 3781.06. Appellees are Angela Cavanaugh, Stark County Building Inspection Department Chief Building Official, and Mark Stewart, Lawrence Township Fire Department Fire Chief.

### STATEMENT OF FACTS AND THE CASE

**{¶2}** Michael and Brenda Gainer renovated a barn on their property and began using it for paid events, such as weddings. Appellees cited appellants for changing the use of the building to "public assembly" without complying with the local building and fire codes. Appellants pursued appeals of the citations through the relevant administrative bodies and were unsuccessful. The appellants filed appeals of the administrative decisions with the Stark County Court of Common Pleas, primarily contending that the party venue, being conducted in building used incident to the agricultural use of the property, was exempt from regulation. The trial court disagreed and affirmed the administrative findings, which compelled appellants to comply with the relevant safety regulations.

**{¶3}** Appellants, Brenda and Michael Gainer, purchased a parcel of land in Lawrence Township in 2000 and since the purchase they have raised livestock and grown crops on the property. Livestock, hay and other agricultural tools and supplies are housed in a barn on the property throughout the year. The appellants provided unrebutted evidence that they used the barn in the conduct of the agricultural activity on the property.

**{¶4}** Mr. Gainer began renovating the upper portion of the barn to create what he described as a "man cave" promptly after the purchase. (Transcript, Stark County Board of Building Appeals, p. 14, lines 20-21). The final product of the remodeling was a space in the upper portion of a two-story barn that was used by the Gainers for events for family, friends, their church and other non-profit organizations without charge. During football season Mr. Gainer used the converted portion of the barn to watch games. When not used for events, the Gainers stored bags of grain and bales of hay in the open space.

**{¶5}** In 2017, the Gainers decided to rent the space to wedding parties and other groups to supplement their income. The record contains images that show the venue being used for weddings and other gatherings in a facility that, though rustic, belies its identity as a barn. The Gainers installed a bar as well as accessible restrooms. The improved portion of the building has a sound system, filtered water, an ice machine, emergency lighting, smoke alarms and panic bars on exit doors. The newer part of the barn features canvas walls with transparent insets that can be removed during temperate weather or snapped securely into place to protect guests during inclement weather. A website promoting the use of the venue as a wedding location claims the Gainers can host as many as 200 guests.

**{¶6}** In 2018 the Gainers applied for a conditional use permit with the Lawrence Township Board of Zoning Appeals asking that they be permitted to operate an "event and rustic wedding facility." (Stark County Court of Common Pleas Case No. 2018CV01869, Stark County Board of Building Appeals, Certified Record filed Oct. 23, 2018, p.1). Mr. Gainer explained that the township recommended that he pursue the permit and he

complied.  That Board considered the application on July 5, 2018 and granted it with following conditions:

1) SECURITY HIRED IF ALCOHOL SERVED USING LAWRENCE TOWNSHIP OR CANAL FULTON POLICE OFF-DUTY OFFICER.

2) 11:00 PM CUT OFF FOR MUSIC.

3) NO PERMANENT SIGN. TEMPORARY SIGN SIZE NO LARGER THAN 3'X3' POSTED NEAR DRIVE DAY OF EVENT, REMOVED NEXT DAY.

4) NO ON-SITE COOKING, FRYING IN BARN. OUTSIDE GRILL, PIG ROAST... OK.

5) FIRE AND SAFETY REGULATIONS: MAINTAIN UPDATED INSPECTIONS OF EXTINGUISHERS AND EXIT SIGNS. FOLLOW ALL FIRE CODE REGULATIONS AND INSPECTIONS.

6) FOLLOW ALL STATE, COUNTY AND TOWNSHIP HEALTH, SAFETY AND OCCUPANCY REGULATIONS.

7) NOISE LEVELS: PROPERTY OWNER WILL PROVIDE AND REGULATE SOUND EQUIPMENT AND NO OTHER OUTSIDE SOUND EQUIPMENT PERMITTED.  THREE EVENT RELATED VERIFIED POLICE COMPLAINTS TRIGGERS AUTOMATIC REVIEW

8) OF THE CONDITIONAL USE CU-01-2018. (SIC)

9) 7) TRAFFIC CONTROL: PROVIDE ADEQUATE AND SAFE PARKING.

10) PROVIDE ASSISTANCE AT STREET FOR TRAFFIC EXITING EVENTS.

(Stark County Court of Common Pleas Case No. 2018CV01869, Stark County Board of Building Appeals, Certified Record filed Oct. 23, 2018, p.18).

**{¶7}** Appellee, Angela Cavanaugh, Chief Building Official at the Stark County Building Department, visited the Gainers on July 10, 2018 and issued an Order to Comply with the Residential Code of Ohio on July 16, 2018, with copies to Lawrence Township Zoning, Lawrence Township Fire Department, Stark County Health Department and the Stark County Auditor. Within the order, Cavanaugh stated "A residential accessory structure, a dining room addition, nor (SIC) a master bedroom addition has been constructed without approval or per the Residential Code of Ohio (RCO) 105." (Stark County Court of Common Pleas Case No. 2018CV01869, Stark County Board of Building Appeals, Certified Record filed Oct. 23, 2018, p.8).

**{¶8}** The order explained that a permit was necessary and that failure to comply could result in prosecution.

**{¶9}** On July 16, 2018, Captain Shawn Yerian of the Lawrence Township Fire Department appeared at the Gainer's residence to conduct an inspection of the building for compliance with the fire code. The Gainer's refused Captain Yerian admission and, on July 23, 2018, the Lawrence Township Fire Department issued Citation and Order #2018-1, Notice Of Proposed Penalty, imposing a civil penalty for " operating an event and rustic wedding facility in the barn on the property located at 15554 Marshallville St, Canal Fulton, Ohio 44614 without obtaining a change of use or occupancy." (Stark County Court of Common Pleas Case No. 2018CV01869, Ohio Board of Building Appeals, Certified Record filed Nov. 27, 2018, p.7).

**{¶10}** The Stark County Health Department issued a letter to Appellant Brenda Gainer on July 16, 2018 ordering her to cease use of the barn for assembly pending completion of an approved water system, sewage treatment system and plumbing system.

The Department also warned that Mrs. Gainer may be in violation of the Ohio Uniform Food Safety Code and law if food was provided on-site. (Stark County Court of Common Pleas Case No. 2018CV01869, Stark County Board of Building Appeals, Certified Record filed Oct. 23, 2018, p.81).

{¶11}  Appellants appealed the orders from the Stark County Building Department and the Lawrence Township Fire Department. The citation from the fire department was appealed to the Ohio Board of Building Appeals.  The Stark County Building Department's order to comply was appealed to the Stark County Board of Building Appeals. A representative of the Health Department testified before the Stark County Board of Building Appeals, but the resolution of the Health Department order is not contained within this record.

### STARK COUNTY BOARD OF BUILDING APPEALS

{¶12}  The order to comply issued by Cavanaugh of the Stark County Building Department was considered by the Stark County Board of Building Appeals on September 13, 2018. Captain Shawn Yerian of the Lawrence Township Fire Department opened the testimony in favor of the order to comply by outlining his involvement prior to the issuance of the order.

{¶13}  Captain Yerian stated he became aware of the appellants' plan to use the barn as a wedding venue on August 6, 2014 when he received information from Kevin Noble, a professional fire protection engineer regarding "the building layout for a wedding barn at 15554 Marshallville Street, Northwest, as a 14,250-square feet A-2 banquet hall." (Transcript, Stark County Board of Building Appeals, p. 4, lines 1-4). Captain Yerian spoke

with Michael Gainer about obtaining the appropriate building and zoning permits for this building on April 29, 2015 and followed up with a letter to Mr. Gainer on May 5, 2015.

{¶14} Captain Yerian stated that the Stark County Auditor was asking about building and zoning permits for this property on April 18, 2018 and, on June 14, 2018, the Gainer's requested a conditional use permit from the Lawrence Township Zoning Department. The conditional use permit was granted on July 5, 2018 and on July 10, 2018, the Lawrence Township Fire Department discovered that the Stark County Building Department had no permits for the Gainer's address, so the Fire Department left a voicemail to schedule a fire inspection. Captain Yerian attempted a fire safety inspection on July 16, 2018, but was denied access to the property. Mark Stewart, chief of the Fire Department issued a citation on July 23, 2018.

{¶15} Angela Cavanaugh stated that she visited the property for an inspection on behalf of the Stark County Building Department on July 10, 2018. She concluded that the building did not comply with the building code and issued a citation on July 16, 2018.

{¶16} Todd Paulus of the Stark County Health Department recalled that he visited the property on July 16, 2018 and talked with Mr. Gainer about water, sewer and plumbing permits that could be required as well as compliance with Ohio Food Safety Code. The Health Department cited the Gainers on July 16, 2018 ordering the cessation of the use of the building for assembly pending compliance with regulations described in the letter.

{¶17} Counsel for appellants established through cross-examination that Cavanaugh, Yerian, and Paulus did not investigate the agricultural use of the building. Ms. Cavanaugh contended that her actions were based upon the visual inspection of the building, a website promoting the use of the barn for weddings and the fire department's

report of a wedding taking place at the barn on July 14, 2018. She and Paulus insisted that the use of the barn as a wedding facility was not a use that was incident to the use of the property for agricultural purposes and was not exempt.

**{¶18}** Mr. Gainer was the only witness to testify on his behalf, except for two individuals who confirmed that they purchased livestock from the Gainers. Mr. Gainer described the structure of the barn and reviewed photographs which showed a two-level barn with the lower level used for sheltering livestock and storage of agricultural tools and supplies. Soon after acquiring the property, Mr. Gainer starting fixing the upper central portion of the barn for his "personal purposes," including fund raising, church outings and watching football games. When the upper central portion of the barn was not being used for public accommodation, it was used for storage of hay.

**{¶19}** The Gainers decided that they could use the upper portion of the barn as a paid event venue to supplement their income. They began with the first paying event in March 2017 and, at the time of the hearing before the Stark County Board of Building Appeals, they had hosted six paying weddings at a cost of as much as $3000.00 per event. The number of guests for each event was not disclosed, but the advertised capacity is 200. Mr. Gainer said he preferred to limit the number to 150 guests.

**{¶20}** Mr. Gainer confirmed for the Board that the part of the barn used for weddings was equipped with fire extinguishers, smoke alarms, emergency lighting and exits as well as accessible restrooms for men and women. The floor in this section of the barn is embossed concreted, made to look like timber planks. The Gainer's added a new structure to the barn in 2015 that is used for agriculture and for public accommodation.

Mr. Gainer stated they had hosted ten events in the building since 2015, presumably referring to the addition to the building.

**{¶21}** The appeal was denied at the close of the hearing and appellants filed an appeal with the Stark County Court of Common Pleas on September 25, 2108 in Case Number 2018CV01869.

## OHIO BOARD OF BUILDING APPEALS

**{¶22}** The appeal of the citation of the Lawrence Township Fire Department was heard by the Ohio Board of Building Appeals on October 19, 2018. Captain Yerian was present and made some comment, but did not provide extensive testimony. The primary witness was Mr. Gainer and his testimony was consistent with his statements made before the Stark County Board of Building appeals. Mr. Gainer explained that once they purchased the barn eighteen or twenty years ago he began repairs and they held family reunions, charity events, baby showers and graduations for eighteen years in the building. During this hearing Mr. Gainer admitted he hosted five events of 150 to 175 people in 2018, but he did not discuss whether those were paid events. He also mentioned that the barn contains a bar, but he does not provide alcohol for events. The facility also has a water system which is tested for bacteria, and an ice machine.

**{¶23}** The Ohio Board of Building Appeals upheld the citation and the appellants filed an appeal with the Stark County Court of Common Pleas, Case No. 2018CV02129. Appellants moved to consolidate the two appeals and the trial court granted the motion, requiring that future filings be recorded under case number Case No. 2018CV01869.

**FIRST COMMON PLEAS COURT DECISION**

**{¶24}** When this matter was first before the trial court, appellants requested the opportunity to present additional evidence asserting that they were entitled to do so by the language of R.C. 3781.03. The trial court disagreed and considered the matter on the pleadings submitted by the parties and the record created by the administrative bodies. The trial court found for the appellees and appellants filed an appeal in this court. This court reversed the decision of the trial court and remanded the matter to the trial court, finding that that the Revised Code granted appellants the right to present additional evidence that was not presented at the administrative hearings. *Gainer v. Cavanaugh*, 5th Dist. Stark No. 2019CA00043, 2020-Ohio-175, ¶ 21.

**SECOND COMMON PLEAS COURT DECISION**

**{¶25}** After the case was remanded, the trial court conducted a hearing on August 20, 2020. Appellants presented the testimony of Michael Gainer and appellees offered the testimony of Angela Cavanaugh and Tim Thompson.

**{¶26}** Gainer used the hearing to emphasize his contention that the barn was used for agricultural purposes with livestock housed in the lower area. He submitted photographs of different locations of the barn showing each to be used in support of the agricultural use of the land. The upper area, including the section used as a wedding venue, was used for storage of hay and agriculturally related supplies. When the Gainer's host an event they clear out this area. They have tables that a customer may use, "fancy lighting," a bar and a sound system. The Gainer's church band used the sound system to practice, and the lights were used to highlight the features of the building.

{¶27} Angela Cavanaugh testified once more, and her testimony was consistent with her statements made at the prior administrative hearing.  She focused on the change of occupancy from an agricultural use to an assembly use and agreed that her position would require a farmer to receive a permit prior to conducting his daughter's wedding in his own barn.

{¶28} Tim Thompson, Division Counsel for the Ohio Department of Commerce, Division of State Fire Marshal testified on behalf of the appellees.  Thompson provides legal advice for all the divisions of the state fire marshal, and identified an exhibit as a technical bulletin issued by his office regarding agritourism.  After identifying this exhibit, he was asked whether the fire code was "separate, apart and independent from the building code" to which appellants objected. While not expressly stating so, the trial court overruled the objection finding that "he can give his opinion.  That does not mean he is right." (Transcript, Stark County Court of Common Pleas, Aug. 20, 2020, p. 104, lines 24-25 to p. 105, line 1.)  Appellants made a continuing objection when Thompson was asked:

> Q. Okay. So let's, let's say a situation exists where the structure--a structure,
> a building is exempt from the state building code for sake of argument; is
> the fire code also exempt?

{¶29} Thompson provided a lengthy response and concluded that if:

> the occupancy of the structure constitutes a change of use or occupancy of
> the structure from one of the exempt uses--which in this case would be

agricultural--to another use listed in this division or another occupancy classification subject to the fire code, then the straight-then the state fire code construction and design provisions apply to that location.

(Transcript, Stark County Court of Common Pleas, Aug. 20, 2020, p. 112, Lines 17-25 to p. 113, line 1).

{¶30} The trial court found in favor of the appellees on September 23, 2020. The court expressed a concern for sanitation and the safety of guests and held that:

> The Court's analysis, as outlined in the February 28, 2019 Judgment Entry has not changed after hearing the new testimony and after considering the new evidence presented at the August 20, 2020 hearing. Both the Ohio Board of Building Appeals and the Stark County Board of Building Appeals decisions were supported by reliable, probative, and substantial evidence and were reasonable and in accordance with the law under the circumstances. The Storybrook Barn does not meet the requirements pursuant to R.C. 3781.06, is not exempt from regulations and is used for assembly purposes. Mr. Gainer himself even indicated that although the barn is utilized for agricultural use, it's been converted to public assembly and occupancy use. The renovations, including the setting for tables and chairs for weddings and receptions, were outlined in the pictures that were presented to the Court (Tr. at 65-71). The Gainers have also inserted a bar for entertaining with a sound system and "fancy lights" (Tr. at 65-68). The barn hosts birthday parties, church band

practices, and dancing, while equipped with both men's and women's restrooms. (Tr. at 32, 34-37, 39-40, 54-56, 58, 61-68, 71-73; Plaintiffs' Exhibit 1, 11-12, 14-15, 34-39).

(Judgment Entry, Sept 23, 2020, p.9).

**{¶31}** Appellants filed a notice of appeal and submitted two assignments of error:

**{¶32}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE AGRICULTURAL EXEMPTION IN ORC §3781.06(B) DID NOT MAKE THE ADMINISTRATIVE ORDERS AT ISSUE ILLEGAL, WHERE THE EVIDENCE PROVED THAT THE STRUCTURE IN QUESTION (A BARN) WAS INCIDENT TO THE AGRICULTURAL USE OF THE LAND. THE TRIAL COURT'S FINDING THAT ANY NON-AGRICULTURAL USE, PER SE, REMOVES PROPERTY FROM THE EXEMPTION IS CONTRARY TO THE EXPRESS LANGUAGE OF THE STATUTE."

**{¶33}** "II. THE TRIAL COURT ERRED IN OUTSOURCING TO A WITNESS THE COURT'S CONSTITUTIONAL DUTY TO DECIDE THE LAW."

## STANDARD OF REVIEW

**{¶34}** The parties disagree regarding the applicable standard of review. Appellants cite to *S.R. Prod. v. Gerrity,* 156 Ohio App. 3d 150, 2004-0hio-472, 805 N.E.2d 104, 122 (8th Dist.) and *Copeland Corp. v. Ohio Dep't of Indus. Relations, Div. of Factory & Bldg. Inspection,* 53 Ohio App. 3d 23, 25, 557 N.E.2d 813, 816 (3rd Dist. 1988) to support their position that appellees have the "burden of proof * * * to establish that the preponderance of the evidence supports the reasonableness and lawfulness of the board decisions." (Appellants' Brief, p. 12). Appellants comment provides a burden of proof for

application at the trial court level but is not instructive on the standard of review at the appellate level.

**{¶35}** In the first case cited by the Gainers, *S.R. Prod. v. Gerrity,* the Eight District Court of Appeals measured the trial court's performance by reviewing the decision for an abuse of discretion *S.R. Prod.* at ¶ 45. And we find the decision in *Copeland Corp.*, though worded differently, also supports an abuse of discretion standard of review: "However, our inquiry is limited to a determination of whether, as a matter of law, there did exist a preponderance of evidence to support the reasonableness and lawfulness of the board's order. Our function does not involve a determination as to the weight of the evidence." *In re Annexation of 1,544.61 Acres* (1984), 14 Ohio App.3d 231, 14 OBR 259, 470 N.E.2d 486. as quoted in *Copeland* at 26.

**{¶36}** Appellee contends that an abuse of discretion standard of review applies and cites to our decision in *Cotton v. Connor,* 5th Dist. Licking No. 19CA0088, 2020-Ohio-1129, ¶ 13, 21, where we found that the trial court did not abuse its discretion when it affirmed a decision of the Ohio Board of Building Appeals*:*

> An appellate court, reviewing the judgment of the court of common pleas, considers only questions of law and does not weigh the evidence. An appellate court will not substitute its judgment for that of the administrative agency or the court of common pleas, unless this court finds that there is not a preponderance of reliable evidence to support the board's decision. *Kisil v. Sandusky (*1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. Within the ambit of questions of law is included whether the common pleas court abused its discretion. *Henley v. Youngstown Bd. of Zoning Appeals*

(2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

**{¶37}** We will review the trial court's decision for an abuse of discretion.

**ANALYSIS**

**{¶38}** We have had the opportunity to review the transcripts of the administrative bodies and the trial court and we conclude that the facts are uncontested. The Gainers have used the building at issue for sheltering livestock and storing agricultural equipment and supplies. Mr. Gainer has renovated a portion of the barn and that section is used as an event venue for paying customers as well as non-paying customers. The Gainers have also used it to watch sporting events and celebrate family milestones. The trial court considered these facts and determined that the use of the barn was no longer incident to the use of the land for agricultural purposes, a decision that appellants argue was erroneous.

**I.**

**{¶39}** In their first assignment of error, the appellants contend the trial court erred by failing to find that the use of their barn was incident to the agricultural use of the land and thus exempt from regulation under R.C. 3781.06. The appellants also complain that "the Trial Court's finding that any non-agricultural use, per se, removes property from the exemption is contrary to the express language of the statute." While the trial court did find that the building was not exempt from regulation, it did not find that "any non-agricultural use, per se, removes property from the exemption." Instead, the trial court focused upon

"whether a building that advertises for, and entertains, private functions attended by numerous people—events such as wedding receptions, parties, reunions, and the like—may operate in dangerous conditions lacking adequate fire precautions for the patrons and lacking the structural integrity to ensure the safety of those patrons." (Judgment Entry, Sept. 2020, page 1). And the court noted that it must determine whether the building in question was exempt from fire and building codes as a building incident to the use of the land for agricultural purposes.

**{¶40}** The resolution of this case is dependent on determining whether the Gainer's barn is a building "incident to the use of the land for agricultural purposes" and therefore not subject to regulation under R.C. 3781.06.  The question of whether a structure is incident to the use of the land for agricultural purposes is a question of fact. *Siebenthaler Co. v. Beavercreek Twp. Bd. of Zoning Appeals,* 2nd Dist. Greene No. 09-CA-36, 2009-Ohio-6595, 3.  *See Also Ross v. Madison Twp.,* 5th Dist. Richland No. 96-CA-57-2, 1996 WL 753186, *1 (The only issue the trial court was required to resolve was whether the mobile home's use was incident to agricultural purposes for the land on which it was located. This is a factual determination within the province of the trial court. *State v. Huffman* (1969), 20 Ohio App.2d 263).

**{¶41}** In *State v. Huffman*, 20 Ohio App.2d 263, 269–70, 253 N.E.2d 812, 817 (3rd Dist.1969) the Third District Court of Appeals described the analysis for deciding whether a structure is incident to the use of the land for agricultural purposes.

'Incident' used as an adjective and in the sense here found means: 'dependent on or appertaining to another thing: directly and immediately relating to or involved in something else though not an essential part of it'

(definition of legal usage of the term given in Webster's Third New International Dictionary).

In 42 C.J.S. Incident p. 520 the term is defined as follows: 'the term is used both substantively and adjectively of a thing which either usually or naturally and inseparably depends on, appertains to, or follows another which is more worthy. * * *'

We thus find that structure-use must be 'directly and immediately' related to agricultural use. It must be either 'usually or naturally and inseparably' dependent upon agricultural use.

**{¶42}** The Revised Code requires examination of the use of the entire building to determine whether it is incident to the use of the land for agricultural purposes. Appellants suggest that any use of any part of the building for agricultural purposes should result in a finding that the exemption applies because the use is incident to the agriculture use of the land, but the statute does not support that conclusion. Revised Code 3781.06 and 3781.061 describe "buildings or structures", requiring review of the entire building or structure and the activity within the building or structure. "In order to qualify as an agricultural use or incident to an agricultural use there must be sufficient evidence that the **structure-use** is "directly and immediately related to agricultural use. It must be either usually or naturally and inseparably dependent upon agricultural use." (Emphasis added.) *Bd. of Tp. Trustees, Jerome Tp., Union Cty. v. Schwab* 3rd Dist. Union No. 14-99-40, 2000-Ohio-1664, *4.

**{¶43}** Appellants cite to *Jones v. Auburn Twp. Bd. of Zoning Appeals,* 11th Dist. Geauga No. 2011-G-3033, 2012-Ohio-6124 in support of their position that their barn is

exempt from regulation as a result of its relation to the agricultural use of the land, regardless of any other use of the barn, including a wedding venue. We find *Jones* distinguishable on its facts and the law.

**{¶44}** In *Jones* the farmer had constructed a wind turbine on their property to reduce their expenses for electricity. The wind turbine was connected "to the power grid of a public electric company. This connection would be necessary to ensure that the property would still receive electricity when the wind turbine is not operating, and also to serve as a means of storing any excess electricity when the turbine produces more than the farm needs. Given the nature of the connection, the local electric company classified appellants' electric meter as "commercial." *Id. at* ¶ 3. The zoning application was denied by the board of zoning appeals because electricity might be produced in such quantities that the utility company would be able to utilize it. "According to the board, this means that appellants would be distributing electricity for "off-site" use." *Id.* at ¶ 7.

**{¶45}** The production of electricity for agricultural use resulted in a potential benefit in the form of the production of excess power that may not be used in an agricultural setting. In *Jones*, the agricultural use provided an unintended benefit without altering the use of the property. In the case before us, the use of the barn as a public accommodation is unrelated to the agricultural use of the barn and occurred only as a result of the efforts of the Gainers to convert the space in the barn otherwise used for storage. The factual predicate of the two cases are distinctly different, rendering the *Jones* holding inapplicable to this case.

**{¶46}** Further, the *Jones* decision did not directly address the agricultural exemption issue and focused on an assignment of error which stated: "The trial court

erroneously relied upon Section 519.213 to hold the Board of Zoning Appeals had inherent authority to prescribe more strict regulations of wind turbines when the Township had not (SIC) created no such regulations under Section 519.213." *Id.* at ¶ 12. In fact "the common pleas court held that the resolution of the "agricultural use" issue was simply irrelevant to whether appellants' construction of the turbine is permissible under the law. Instead, the court held that the outcome of the controversy is controlled entirely by R.C. 519.213." *Id.* at ¶ 19. The appellate court reversed the trial court on this assignment of error and remanded the case "for further proceedings in regard to the "agricultural use" issue and, if necessary, the issue of whether a small wind farm have (SIC) been banned in Auburn Township if the wind turbine is not for agricultural purposes." *Id.* at ¶ 39. The *Jones* court's discussion of the agricultural exemption is dicta, speculative and of little assistance in the case before us.

{¶47} The Second District Court of Appeals issued a decision considering facts and issues that are strikingly similar to the facts of the case before us as appellant in that case was using a barn as a wedding venue and arguing that it was exempt from regulation under the language of R.C. 3781.06(B)(1). In *Powlette v. Bd. of Bldg. Appeals Dayton*, 2nd Dist. No. 28666, 2020-Ohio-5357, 162 N.E.3d 964 the court found that Powlette "hosts weddings at his barn, and he has been ordered to stop work by the MCBRD, cited by the BZA, and cited by the Fire District." *Id.* at ¶ 55. Powlette and the Gainers both promoted their barn as a wedding venue through a website and both claimed they could accommodate up to 200 guests. *Id.* at ¶ 50. The Second District noted that "Powlette was an experienced builder. He was undoubtedly aware of the Ohio Building Code and its requirements, and he attempted to circumvent them." *Id.* at, ¶ 62. Mr. Gainer also claimed

to be a builder, and actually expressed some concern about the safety of his guests and compliance with building code when he described the installation of exit signs, panic bars and smoke detectors in the building. The Gainers, like Powlette, are seeking to circumvent the obligation to comply with the building code requirements by using R.C. 3781.06 as a shield to protect a use that is not agricultural.

**{¶48}** Powlette was ordered to stop work by the Mahoning County Building Regulation Division and cited by the local fire district and the board of zoning appeals. The Gainers were ordered to stop work by the Stark County Board Building Department because the use of the building had changed, they were cited by the Lawrence Township Fire Department after refusing to permit an inspection and it appears they have violated their conditional use permit by failing to insure compliance with the building code and the fire code.[1] The material facts are sufficiently similar to warrant the same conclusion as the Second District: "the * * * barn cannot retain its agricultural exemption under these circumstances, given the issues of fire safety and life safety for the attendees of the events in the barn." *Id.* at ¶ 55. The trial court relied on the same logic, finding the exemption does not apply in the context of the risk to sanitation and safety of the guests.

**{¶49}** The agricultural exemption also fails in light of the change of use of the Gainer's building. Throughout their brief and in argument, the Gainers describe the agricultural exemption as immutable. They suggest that once the exemption is established, any use may be conducted within the building contingent upon any agricultural use continuing within the barn. During argument counsel for the Gainers

---

[1]While it appears that the conditional use issued by Lawrence Township Board of Zoning Appeals has been violated by the same actions that gave rise to the citations appealed to this court, the record does not contain a citation from Lawrence Township or any evidence of the Township's position regarding the Gainer's use of the building.

suggested that the statute must be interpreted as supporting the exemption regardless of how inconsequential the agricultural use may be when compared to the use occurring in the balance of the building.

{¶50} The Gainer's construction of the statute produces illogical results and is not supported by the language of the statute. To reach the result the Gainers promote, we must amend the statute so that agricultural use of any part of the building would qualify the entire building for the exemption. We must reject that interpretation and, instead, consider the use of the entire building.

{¶51} Revised Code 3781.06(B)(1) exempts from compliance with building codes and other safety requirements only those "Buildings or structures that are incident to the use for agricultural purposes of the land on which the buildings or structures are located * * *. The analysis requires the trial court to determine whether the use of the "building or structure" is "incident to the use for agricultural purposes of the land" and not whether some activity within the building is related to the agricultural use of the land. Gainers' counsel conceded that this is the focal point of the case in the hearing before the Ohio Board of Building Appeals when he stated that " * * * * basically the question is whether there is agricultural use sufficient to trigger this exception from the ability of either the fire marshal or the building department to regulate." (Transcript of Ohio Board of Building Appeals, p. 36, ll. 20-25 to p. 37, ll. 1-2).

{¶52} Our review must focus upon the trial court's application of the phrase "incident to the use for agricultural purposes of the land" to a building or structure in the context of the enforcement of R.C. 3781.06. Revised Code 3781.06 and the relevant

phrase have not received extensive judicial scrutiny, but an identical phrase in R.C. 519.21 has been the subject of a long list of decisions.  Revised Code 519.21(A) states:

>        (A) Except as otherwise provided in divisions (B) and (D) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of **buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located**, including buildings or structures that are used primarily for vinting and selling wine and that are located on land any part of which is used for viticulture, and no zoning certificate shall be required for any such building or structure.

(Emphasis added.)

{¶53}  And, while R.C. 519.21 applies only to township zoning, we find that the analysis and determination of whether a building is "incident to the use for agricultural purposes of the land on which the buildings or structures are located" must be the same regardless of the context.

{¶54}  First, we note that the agricultural use exemption is based upon the use of the structure and "[w]hether, in a particular case, the use of a structure is "incident" to agricultural use is essentially a question of fact for the trier of facts." *Schabel v. Troyan,* 11th Dist. Geauga No. 2010-G-2953, 2011-Ohio-2452, ¶ 53; *Siebenthaler Co. v. Beavercreek Twp. Bd. of Zoning Appeals,* 2nd Dist. Greene No. 09-CA-36, 2009-Ohio-6595, ¶ 3. *See also State v. Huffman,* 20 Ohio App.2d 263, 269–70, 253 N.E.2d 812, 817

(3rd Dist.1969) (It would appear that whether 'structure use' was incident to 'agricultural use' is essentially a question of fact for the trier of facts.)

**{¶55}** From the facts presented, the trial court was obligated to determine whether the "structure-use [was] 'directly and immediately' related to agricultural use. It must be either 'usually or naturally and inseparably' dependent upon agricultural use." *Huffman* at 269. We have held the analysis requires a review of the principal or dominant use of the structure. *Risely v. Stuchell*, 5th Dist. Stark No. 1995CA00136, 1996 WL 74692, *3; *Smith vs. Nist.*, 5th Dist. Stark No. 5190, 1980 WL 354141, *3.

**{¶56}** The trial court addressed the application of the agricultural exemption described in R.C. 3781.06 in its judgment of February 28, 2019 and incorporated by reference that analysis in its judgment of September 23, 2020.  In 2019, the trial court found that Gainers' Storybrook Barn "is not exempt from regulations by the Stark County Building Department." (Judgment Entry, Feb. 28, 2019, p. 6).  The barn was not "incident to the agricultural use of the land" but was used for assembly purposes for "close to 18 years" and was promoted on a website as an event and wedding venue. *Id.* at p. 6. The trial court noted that the Gainers application for a conditional use permit described Storybrook Farm as "an event and rustic wedding facility" and that they were now changing the designation of the property in an attempt to take advantage of the R.C 3781.06 exemption.

**{¶57}** The trial court found that its analysis of February 28, 2019 had not changed after receiving additional evidence and testimony at the August 2, 2020 hearing.  The trial court held that the agricultural use exemption did not apply after listing "the evidence [that] showed that the change of use of Storybrook Barn was for the purpose of public assembly

and occupancy use." (Judgment Entry, Sept. 23, 2020, p. 7).   The trial court compiled references to the record in support of its conclusion:

- Middle section of the barn: "remodeling this and making it nice as another area for us (the Gainers) to use for anything we wanted." Tr. 32; Appellants' Ex. 11-15.

- Middle section of the barn is used for events, tables, caterer, eating, bar, "having fun with my friends." Tr. 34, 65-66; Appellants' Ex. 11-12.

- Tables and seating. Tr. 62, 72-73.

- Weddings in the Barn. Tr. 54, 62.

- Events. Tr. 55, 61-62; Appellants' Ex. 34-39.

- Exit doors, panic bars, exit signs. Tr. 37, 58; Appellants' Ex. 12, 14, 39.

- Kitchen, Tr. 39-40.

- Guest, assembly, "people walking through the porch." Tr. 56, 58; Appellants' Ex. 35.

- "Couple toasting themselves...people are just enjoying themselves." Tr. 58; Appellants' Ex. 39.

- People walking around taking pictures with cows. Tr. 63.

- Speakers, TV, radio, sound system, band, band practice, church worship band, "fancy" lighting system, birthday parties, dancing, men's and women's restrooms. Tr. 65-68; Appellants' Ex. 11-12.

- Load calculations for barn renovations. Tr. 70.

- Balcony. Tr. 71-72; Appellants' Ex. 2.

- Decorations and linens. Tr. 72-73; Appellants' Ex. 39.

(Judgment Entry, Sept. 23, 2020, p. 7)

{¶58} The trial court found that the use of the barn for a wedding/event venue created significant safety concerns for the health and safety of the occupants assembled at the barn:

- Two Canvas (see-through plastic), snap on walls. Tr. 24-25, 38, 59; Appellants' Ex. 15.

- Dry, combustible hay "everywhere." Tr. 30-31, 36-38; Appellants' Ex. 10, 14.

- Exposed, combustible wood/timbers. Tr. 60-61; Appellants' Ex. 10-15, 19-26, 29-30, 33, 35, 39.

- Grain, corn storage within the structure. Tr. 31-33, 41.

- Dry, combustible straw throughout the structure. Tr. 62.

- Kerosene fuel cans. Appellants' Ex, 10.

- Two types of flooring in the middle section of the barn; concrete and wood. Tr. 32-33; Appellants' Ex. 11.

- Rodents. Tr. 33-34.

- Full and empty corn and feed bags. Tr. 35; Appellants' Ex. 11-15.

- Refrigerator, ice maker, with drugs and chemicals for the animals, beer, and other "multiuse." Tr. 39-40; Appellants' Ex. 16.

- Gasoline/diesel powered implements storage. Tr. 44, 49-52; Appellants' Ex. 22, 29, 31-33.

- Acetylene and oxygen tanks for welding. Tr. 50-51; Appellants' Ex. 30.

(*Id.*)

{¶59} Mr. Gainer acknowledged the issue of the occupants' safety, noting that he installed panic bars and exit signs, "things that are not done in the normal world of agriculture" perhaps not realizing that this admission supports the trial court's conclusion that the building was not incident to the agricultural use of the property. (Transcript, Ohio Board of Building Appeals, Oct. 19, 2018, p. 8, ll. 4-7). The trial court found that the housing of an event venue accommodating as many as 200 individuals created safety and sanitation risks to guests that were also not "normal in the world of agriculture."

{¶60} The question before the trial court was whether a building in which groups of up to 200 people may gather for an event and in which agricultural uses occur is incident to the use of the land for agricultural purposes. Are the uses of the building usually and naturally and inseparably dependent on agricultural use? The trial court found that the Gainers' use of the building was not "incident" to agricultural use of the land. While we acknowledge that the prohibition on restriction of agricultural uses serves an important policy of encouraging agriculture, the trial court concluded, and we agree that, in the context of this case, the building and fire code serve the more pressing need to protect the health and safety of the public.

{¶61} After reviewing the record, the trial court concluded that "Both the Ohio Board of Building Appeals and the Stark County Board of Building Appeals' decisions were supported by reliable, probative, and substantial evidence and were reasonable and in accordance with the law under the circumstances" and that the Gainers' building is not exempt from the regulations described in R.C. 3781.06. After reviewing the record and

the extensive findings of the trial court, we hold that the record contains a preponderance of reliable evidence to support the Boards' decisions and, therefore, the trial court did not abuse its discretion in so finding.

{¶62} The Gainers' first assignment of error is denied

**II.**

{¶63} In their second assignment of error, the Gainers contend the trial court erred by "outsourcing to a witness the Court's constitutional duty to decide the law." The Gainers contend that the trial court erred by allowing Tim Thompson to testify regarding whether the fire code was separate and apart from the building code and whether it would apply to their event venue. Within their brief, the Gainers argue that Thompson's expert testimony regarding the applicable law invaded the province of the judge and should have been excluded. They also argue that his interpretation of the law was incorrect and that he failed to identify which version of the fire code was applicable, considering the fact that the barn was built long before the existence of the current code. They contend that the trial court issued a conclusion of law "that the fire code applies even if the Agricultural Exemption also applies, but there was no basis for that finding." (Appellants' Reply Brief, p. 3-4; Appellants' Brief, p. 23).

{¶64} We find that appellants have misstated the trial court's findings regarding the fire code as the judgment contains no conclusion regarding the fire code.   While the trial court did summarize all of the new evidence presented at the August 20, 2020 hearing, including the testimony of Thompson, it made no findings regarding the application of the fire code.  The trial court did not list the application of the fire code as an issue in its preliminary statement to the judgment and made no reference to it in its final analysis and

judgment. The trial court did state that the building did "not meet the requirements pursuant to R.C. 3781.06, is not exempt from regulation and is used for assembly purposes." (Judgment Entry, Sept. 23, 2020, p. 9).  Because the trial court found that the agricultural exemption did not apply, it made no finding regarding the application of the fire code in the context of a building used in agriculture.

{¶65}  Appellants second assignment of error complains of a ruling that was not made by the trial court and, considering the trial court's finding that the agricultural exemption is inapplicable, the question regarding the application of the fire code is rendered moot.

{¶66}  The Gainers' second assignment of error is denied and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Hoffman, J. and

Delaney, J. concur.